(79 App. Div. 470.)

## NELLIS et al. v. LAUGHLIN.

(Supreme Court, Appellate Division, Fourth Department. January 6, 1903.)

1 NEGLIGENCE—CUTTING ICE—FAILING TO GUARD HOLE—CAUSE OF DEATH—EVIDENCE—SUFFICIENCY.

Evidence examined, and *held* insufficient to support a finding that the negligence of defendant in leaving unguarded a place on a river where he had been cutting ice was the cause of the death of plaintiff's intestate.

Appeal from trial term, Jefferson county.

Action by John Nellis and another, as administrators, etc., against Henry A. Laughlin. From a judgment in favor of plaintiffs, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before ADAMS, P. J., and SPRING, WILLIAMS, HIS-COCK, and NASH, JJ.

Purcell, Walker & Burns, for appellant.
Jerome B. Cooper and E. C. Emerson, for respondents.

WILLIAMS, J. The judgment and order should be reversed, and a new trial granted, with costs to appellant to abide event. The action was to recover damages for the death of the plaintiffs' intestate, alleged to have been caused by the negligence of the defendant. The deceased was drowned in the St. Lawrence river, near Alexandria Bay, Jefferson county, N. Y., January 27, 1899, by breaking through the ice at a place where defendant had been taking ice to store in his icehouse for summer use. The negligence alleged was a failure to properly guard the place from which the ice had been removed. No one saw the accident occur. Defendant had a summer home on Wells Island, which he had owned for 15 years. Just north of him was the summer home of Browning, south of him the summer home of R. H. Pullman, and in the vicinity were other summer homes, on different islands. A week prior to the accident in question, the icehouses of defendant and Browning had been filled from the place in question; several days having been occupied in doing the work. The place where the ice was taken out was just opposite the Browning dock, and 5 or 10 rods from the shore. After the ice was removed, no guards were placed around the hole. At a point about 30 feet from the Pullman dock, toward defendant's premises, there was a water hole made for the purpose of getting water for the use of people occupying the Browning farmhouse during the winter. The deceased had worked in the vicinity for some years. He was about 20 years of age, and for several months prior to the accident had been employed about the Browning premises, doing light work and chores, and one of his duties was to take water from the hole near the Pullman dock, and carry to the house for use therein. This he did several times a day after the river froze over, and down to the time of the accident. The place where the ice was taken out was in full view, and the removing of the ice and storing it in the icehouses having occupied several days, when the deceased was in the vicinity, about the Browning premises and upon the river carrying water from the hole in the ice near the Pullman dock, the inference is irresistible that he must have known of the locality of the hole from which the ice was removed.

For two months prior to the accident, Mr. Polhemus, who lived in the Browning farmhouse, had been suffering from blood poisoning, and had been attended by a doctor living at Alexandria Bay, who visited him daily. When the doctor first commenced making his visits, he told deceased that every morning, when he called, he would want a pail of cold water for use in his treatment of the patient. On the morning of the accident, at 10 or 11 o'clock, deceased received instructions in the Browning house to get some water. He went to the barn, and there met the doctor, who had just arrived, talked with him, and, taking a galvanized iron pail, said he would go for some water. He passed out of and around the barn toward

the river, and was not seen again alive. The iron pail was never found. Upon search being made for him soon after, a small ax or hatchet and one of his mittens were found on the old ice, 5 or 6 feet from the edge of the hole from which the ice had been removed. The new ice over the hole was broken to a considerable extent. His body was found the next day in the river, under the ice, 300 feet from where the new ice was broken. The weather during the week prior to the accident had been variable in temperature. Some snow had fallen, and the wind had at times been fresh, causing the snow to drift. The old ice about the hole was about 8 inches thick, and the new ice formed over the hole was an inch or less thick. Refuse and broken cakes of ice were about the hole, and also an ice bench, used in the work of taking and removing the ice. There was some snow over the new ice. Other facts appeared on the trial, which need not be referred to, as they are unimportant in considering the points which seem to us controlling upon this appeal. There was evidence sufficient to authorize a finding by the jury that defendant was negligent in failing to guard the place, after he had removed the ice, until such time as new ice should form of sufficient thickness to bear up a person passing over it. The purpose of such a guarding is to protect persons having occasion to pass along the ice, and who are ignorant of the dangerous condition, or who may not have it in mind. It was incumbent upon the plaintiffs, however, to prove, not only that the defendant was negligent, but that such negligence was the cause of the accident and death; otherwise, they were not entitled to recover.

We think it must be assumed, for the purposes of this appeal, that the deceased had full knowledge of the taking of the ice and the locality of the hole from which it was removed. If the jury found otherwise, the finding was without evidence to support it, and should be set aside or disregarded. It does not necessarily follow that the failure to guard did not cause the accident, even though the deceased had knowledge of the removal of the ice and the locality of the hole. He may not have had in mind at the time of the accident the fact that he was in the locality of the hole, and, if the guard had been there, his attention might have been called to it, and the accident avoided. The difficulty is that there was no evidence given on the trial from which any such inference could be legitimately drawn. The burden of proof was upon the plaintiffs to show that the defendant's negligence caused the accident and death, and we are unable to see how they have shown this. It did not appear how deceased came to go upon the new ice,—whether he was on his way to some point beyond the hole, and unintentionally went upon the new ice in passing by, not having in mind that he was in the locality of the hole, or whether, well knowing he was at the hole, he intentionally went upon the ice for the purpose of cutting a hole from which to get water.

If the former theory was the correct one, the neglect to guard the hole might have caused the accident. If the latter theory was the correct one, the neglect to guard the hole could not have been the cause of the accident at all. The jury could not be left to speculate as to which theory of the accident was the correct one. It was not

necessary that there should be direct proof on the·subject; but there should be at least proof. of circumstances from which an inference could be fairly drawn by the jury, in favor of the theory, permitting a recovery by the plaintiffs. There was in this case no such circumstantial evidence. The circumstances tended to show that the deceased was after water. That was his errand down to the river. He said he was going for water. He took the ax to cut through the ice and the iron pail to bring the water in. He was not going in the direction of the water hole, but in an opposite direction. He intended to get the water at some place other than the water hole, because he took the ax and pail with him to the place where he was drowned. He evidently went there· to get the water. The ax was found near by. The pail went with him to the bottom of the river. This theory is the only one that could fairly be inferred from the circumstances. Any other inference would be without evidence to support it and could not be upheld. If the deceased was at the place where he was drowned for the purpose of getting water, and knew that the old ice had been removed, and only new ice covered the hole, then, however careful or negligent he may have been in attempting to get the water, his drowning would in no way have been the result of the defendant's neglect to guard the place.

It must be remembered that the defendant's negligence did not consist in cutting and removing the ice and leaving a hole there. He had a legal right to do that. Unless the neglect to guard the place, and so warn the deceased of the danger, was the cause of the drowning, if the deceased, when he approached the place, knew about it as well as a guard would have informed him, then the defendant was in no legal sense liable for his death. The circumstances proved on the trial were equally as consistent with the theory we have suggested, as the theory that deceased was upon some other errand, which took him beyond this place, and that he unintentionally, in passing, went upon the new ice and was precipitated into the river; and, if this be true, the burden of proof was not sustained by the plaintiffs as to this issue. Indeed, we think the theory we have suggested is the only one that could fairly be inferred from the circumstantial evidence·given upon the trial. We conclude, therefore, that the verdict, so far as it was based upon a finding that the negligence of the defendant caused the death of the plaintiffs' intestate, was without evidence to support it. Having arrived at this conclusion, we do not regard it as important to examine the other questions raised by the defendant in the case.

The judgment and order appealed from should be reversed, and a new trial granted, with costs to appellant to abide event.

Judgment and order reversed, and new trial ordered, with costs to the appellant to abide event, upon questions of law only; the facts having been examined and no error found therein. All concur.